# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

7/2/20

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. DAYTON

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
TARGET CELLPHONE SAMSUNG MODEL SM-A102U )   Case No. 3:20MJ308
BEARING IMEI: 356272100806459, CURRENTLY @ )
MCSO, 345 W. SECOND STREET, DAYTON, OHIO )

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the ____Southern____ District of ____Ohio____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922 | Felon in possession of a firearm |

The application is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

KENNETH PITNEY  Digitally signed by KENNETH PITNEY
Date: 2020.07.02 11:44:04 -04'00'

*Applicant's signature*

SA KENNETH PITNEY, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ____Facetime____ *(specify reliable electronic means)*.

Date: 07/02/2020

_____
*s signature*

City and state: DAYTON, OHIO       U.S. MAGISTRATE JUDGE
*ame and title*

# ATTACHMENT A

The property to be searched is described as follows:

a. TARGET CELLPHONE – Samsung model SM-A102U cellphone bearing IMEI: 356272100806459

(identified as the "TARGET CELLPHONE")

The Target Cellphone is currently maintained in secure law enforcement custody in @ MCSO, 345 W. Second Street, Dayton, Ohio.

This warrant authorizes the forensic examination of the Target Cellphone for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1. All records on the Target Cellphone described in Attachment A that relate to violations of, 18 U.S.C. § 922(g) and 21 U.S.C. § 841(A)(1); including:

   a. Evidence of narcotics trafficking and/or possession;

   b. Evidence of firearms trafficking and/or possession;

   c. Records and information relating to a conspiracy to traffic and/or possess narcotics, including co-conspirator communications;

   d. Records and information relating to a conspiracy to traffic and/or possess firearms, including co-conspirator communications;

   e. Records and information relating to access to communication websites and apps (e.g., SnapChat);

   f. Records and contact information relating to identification of any additional participants in the scheme;

2. Evidence of user attribution showing who used or owned the Target Cellphone at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

4. Records of location information, including Global Positioning System ("GPS") data.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE TARGET CELLPHONE SAMSUNG MODEL SM-A102U BEARING IMEI: 356272100806459, CURRENTLY @ MCSO, 345 W. SECOND STREET, DAYTON, OHIO | Case No. 3:20MJ308 |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, KENNETH PITNEY, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of certain property, to wit: an electronic device which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent of the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and have been so employed since 2013. I am currently assigned to the Cincinnati Group I Field Office in Cincinnati, Ohio. I graduated from the ATF Special Agent Basic Training. My trainings also includes: attending the Ohio State Highway Patrol Academy and Federal Law Enforcement Training Center Criminal Investigators Training Program among others. I have participated in criminal investigations, including investigations relating to illegal possession of firearms, illegal purchases of firearms, illegal sales of firearms, illegal trafficking of firearms, illegal possession of controlled substances and illegal sales of narcotics among others.

3. The information contained in this affidavit is based upon my personal knowledge, as well as other information that I have received from other law enforcement sources. Because this affidavit is made for the limited purpose of establishing probable cause for the issuance of a search warrant, I have not recited each and every fact known to me as a result of this investigation. As a result of my personal participation in this investigation, conversations with other law enforcement officers, reports and other sources, I am familiar with the circumstances described in this affidavit.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is a cellular telephone which was taken into custody by the Bureau of Alcohol, Tobacco, Firearms and Explosives on or about June 10, 2020. Since that date, it has remained in law enforcement custody at the Montgomery Co. Sheriff's Office, 345 W. Second Street, Dayton, Ohio since. The property is further described as follows:

   a. TARGET CELLPHONE – One (1) Samsung model SM-A102U cellphone bearing IMEI: 356272100806459

(hereinafter, identified as the "Target Cellphone").

5. The applied-for warrant would authorize the forensic examination of the Target Cellphone for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. In addition to my own investigation, I have spoken with members of the Montgomery County Sheriff's Office (MCSO), as well as reviewed their reports of investigation and other documents relevant to the investigation. Based upon this information, I have learned, among other things, the following:

7. On or about June 2, 2020, Montgomery County Sheriff's Office (MCSO) Deputies responded to the area of Woodland Hills Boulevard and Keenan Avenue in Harrison Township, Ohio on a report of a suspicious person in a Red Hyundai Sonata. Upon arriving at this location, MCSO deputies made contact with a Red Hyundai Sonata, which was occupied by Zachary LIMMER (hereinafter referred to as "LIMMER"). Deputies immediately noticed that LIMMER had a shotgun next to his leg. As a result, LIMMER was removed from the vehicle. The shotgun was determined to be a Mossberg model 500C, 20 gauge shotgun which had been modified (hereinafter "the FIREARM"). The specific modifications included removing the serial number, shortening the barrel to approximately 14 ½ inches, and reducing the original stock for use as a pistol grip. On June 3, 2020, a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent (SA) interviewed LIMMER about his possession of the FIREARM. During this interview, LIMMER stated that the FIREARM belonged to Christopher James CURRY. LIMMER further stated that CURRY had left the FIREARM in his vehicle a couple of days prior when he gave CURRY a ride. LIMMER further described CURRY to be a "mainline meth" addict and felon.

8. On June 9, 2020 ATF operatives attempted to conduct a controlled purchase of evidence (PoE) from CURRY at to 3900 North Haven Way, Dayton, Ohio (hereinafter "the RESIDENCE") using an ATF confidential informant (hereinafter "CI-28821"). During the controlled PoE, ATF agents observed CURRY arriving at the RESIDENCE along with LIMMER in a red Hyundai Sonata vehicle. ATF personnel thereafter observed CURRY enter the RESIDENCE. During the controlled PoE, CURRY appeared to be visibly erratic and was heard making threats towards the mother of his children, Amanda Howett. CURRY also made

3

references to a 20 gauge shotgun that he had given LIMMER and wanted returned so that he could carry out the said threats against Ms. Howett.

9. On June 10, 2020 MCSO Deputies received a 911 call for service from Pam Curry (CURRY's mother).  Mrs. Curry stated that her son had contacted her the previous evening threatening to get a firearm and kill Amanda Howitt and her new boyfriend Josh Jenkins, along with himself. Mrs. Curry further stated that CURRY had sent her a picture of a firearm along with the threats.

10. On June 10, 2020, your Affiant and an MCSO Detective met with Mrs. Curry regarding the threats her son was making. Mrs. Curry stated that her son has lived at 3900 North Haven Way, Dayton, Ohio (the RESIDENCE) for the last three (3) years. Mrs. Curry further stated that the lease for the RESIDENCE is in her name, and that she pays the rent for her son to live there. Mrs. Curry further stated that her son has been using meth and heroin for several years and is legally not allowed to possess a firearm. Mrs. Curry further stated that CURRY previously physically beat Ms. Howitt so badly about a month ago, that she could not stand up.  He also held Ms. Howitt and their children captive at the RESIDENCE. Mrs. Curry stated that she had to send her daughter to the RESIDENCE in order to diffuse the situation. Mrs. Curry stated that she believed that if she had called the police at that time, CURRY would have inevitably killed the family. Mrs. Curry provided the investigators with the text messages which CURRY sent her along with the picture of the firearm. The picture of the firearm CURRY sent Mrs. Curry matches the FIREARM seized from LIMMER's vehicle at the time of his arrest on June 2, 2020. The message, which included the photo of the FIREARM, was dated May 31, 2020. Mrs. Curry, also showed the investigators a text message received from CURRY dated the morning of June 10, 2020, which read "Not me nemore once I get this new gun… Damian ryker laina kiesen an

vannah wnt have ne parent .. was gona let manda live but found out the whole ryker thing was jus an excuse… c she punchd vannah wen she was goin after krista .. I stayd …busted Damien wen we lived on hay she stayd…this is allcuz she want to b wit ol josh Jenkins the 1st 1 she cheated on me wit whole I was n money n the house u got for me an the phone u had for me". Mrs. Curry also stated that in previous conversations with Ms. Howett, Ms. Howett claimed that CURRY has a stack of firearms in the RESIDENCE. Mrs. Curry indicated that she was not sure if CURRY still had the firearms.

11. On June 10, 2020, ATF secured a Federal Arrest Warrant for CURRY. After executing CURRY's arrest, CURRY was provided his Miranda rights, which he acknowledged and waived, agreeing to speak with investigators. During this interview, CURRY admitted that he took the photograph of the firearm which he sent to his mother, and that it was in-fact his foot appearing in the photograph. CURRY further stated that he had left his cellphone in his boss', Chase Meerhoff, truck at the time of his arrest. CURRY further stated that there would be additional photographs of the firearm along with another person he identified as "Zach" possessing the FIREARM. CURRY requested your Affiant obtain the cellphone from Mr. Meerhoff so that CURRY could establish that the firearm was "Zach's". CURRY further stated that he regularly deletes his photographs on his cell phone, however they are backed up to his Google accounts, where he can restore the photographs.

12. On June 10, 2020, your Affiant interviewed Mr. Meerhoff regarding CURRY and the cellphone left in his vehicle. Mr. Meerhoff stated that CURRY had indeed left his cellphone in the vehicle when police stopped them and arrested CURRY. Mr. Meerhoff provided your Affiant with a Samsung model SM-A102U cellphone bearing IMEI: 356272100806459 (hereinafter "the TARGET CELLPHONE"), stating that this was CURRY's cellphone. Your

5

Affiant entered the TARGET CELLPHONE into ATF property. Mr. Meerhoff advised that CURRY regularly has been known to buy and sell firearms and attempts to have others buy and sell firearms on his behalf. Mr. Meerhoff further stated that CURRY recently sent him a photograph of a sawed off shotgun that CURRY was attempting to sell. Your Affiant showed Mr. Meerhoff the photograph of the FIREARM that CURRY had previously sent to Pamela Curry on May 31, 2020. Mr. Meerhoff immediately identified the firearm in the picture as the same firearm CURRY had previously attempted to sell him. Mr. Meerhoff further stated that, while the photograph depicted the same firearm, it was not the same photograph CURRY previously sent him.

13. On June 10, 2020, your Affiant interviewed Bradley STOVALL at the RESIDENCE. At the time, STOVALL was detained by law enforcement due to the execution of a search warrant. STOVALL was provided his Miranda rights, which he acknowledged and waived. STOVALL then told your Affiant that CURRY operates the RESIDENCE as a "flop house", meaning that drug users come there to buy and use illegal narcotics for multiple days at a time. STOVALL further stated that CURRY had been operating the RESIDENCE as such for at least the past year. STOVALL stated that his sister stayed at the RESIDENCE and got high on illegal narcotics for multiple days at a time.  He would visit her during these binges and bring her food. STOVALL further stated that he believed CURRY sold heroin, methamphetamines, and marijuana.

14. Based upon my training and experience, I know that the TARGET CELLPHONE has been stored in a manner such that its contents are, to the extent material to this investigation, in substantially the same state as they were when the TARGET CELLPHONE first came into the possession of law enforcement.

15. Based upon my training and experience, I know that individuals involved in illegal narcotics firearms possession and trafficking will commonly take photographs of the narcotics and firearms they are possessing and selling. I also know that those engaged in illegal narcotics and firearms possession and trafficking typically use cellphones as a primary means of communication to facilitate and document their illegal activities.

16. Based on my training and experience, I believe that the aforementioned facts establish probable cause to believe that the Target Cellphone contain evidence of violations of Federal law to wit: 18 U.S.C. § 922(g)(1) and 21 U.S.C. § 841(A)(1).

## TECHNICAL TERMS

17. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images.

7

        This storage media can contain any digital data, including data unrelated to photographs or videos.

c.     Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.     GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.     PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

18. Based on my training, experience, and research, I know that the Target Cellphone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is

9

       evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

    f.    I know that when an individual uses an electronic device to facilitate the trafficking of narcotics or firearms, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

21.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

22.    *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

//

//

//

//

## CONCLUSION

23.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Target Cellphone described in Attachment A, in order to seek the items described in Attachment B.

Respectfully submitted,

KENNETH PITNEY   Digitally signed by KENNETH PITNEY
Date: 2020.07.02 11:43:33 -04'00'

Kenneth Pitney
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me
on ~~June~~ ____, 2020.

7/2/20

_____
Sharon L. Ovington
United States Magistrate Judge

11